MARTIN, J., and MERWIN, J., concurred.

Judgment affirmed, with costs.

---

THE PEOPLE OF THE STATE OF NEW YORK EX REL. SIMON D. PADDOCK, APPELLANT, *v.* KIRBY W. LEWIS, ENOCH C. NICHOLSON AND ANDREW G. GRAHAM, AS ASSESSORS, AND CHARLES C. COLE, AS SUPERVISOR OF THE TOWN OF ELBRIDGE, ONONDAGA COUNTY, NEW YORK, RESPONDENTS.

Certiorari — *returnable at the clerk's office instead of at Special Term — what is a waiver of the objection — failure of a party assessed to object on grievance day.*

A writ of *certiorari*, issued under chapter 269 of the Laws of 1880, for the purpose of reviewing an assessment for personal property in the town of Elbridge, New York, against the relator, was returnable " within twenty days after the service on you of this writ, at the office of the clerk of Onondaga county, * * * so that our Supreme Court may further cause to be done thereon what of right and according to law ought to be done." After the service of the writ and the filing of a return thereto with the clerk of Onondaga county, and on the 20th of December, 1888, both parties appeared at the Onondaga Special Term and stipulated that the matter be referred to a referee.

*Held,* that an objection that the writ was not returnable at a Special Term, as required by the statute, was waived.

That the voluntary act of the parties fixed the term on the twentieth of December as the term to which the writ should be returned.

It was objected that the relator was barred of any remedy, under the act of 1880, by reason of his failure to appear and object to the assessment on grievance day. The relator claimed that he was not a resident of the town in which he was assessed,

and that, therefore, the assessors had no jurisdiction to assess him; and it appeared by the evidence that the assessors knew that the relator claimed that he was not a resident of the town, and that there had been a previous controversy between them on the subject.

*Held*, that, under the circumstances of this case, the failure of the relator to appear before the assessors on grievance day and object to the assessment did not preclude him from applying for a writ of *certiorari* to review the action of the assessors.

APPEAL by the relator, Simon D. Paddock, from an order and judgment and determination of the Special Term held in Onondaga county, entered in the office of the clerk of that county on the 2d day of May, 1889.

The order was made in proceedings had pursuant to a writ of *certiorari*, issued upon the application of the relator to review an assessment for personal property against him, made by the assessors of the town of Elbridge, New York, which it was claimed was illegal, as the relator was not a resident of that town, and the assessors, consequently, had no jurisdiction to assess him therein for personal property.

The grounds upon which the writ was quashed were, as stated in the order, as follows :

*First.* Said writ is not made returnable to a Special Term of this court as by statute required.

*Second.* After personal and due legal notice duly given by said assessors of the hearing of grievances, said relator failed to appear and make complaint of his assessment, and so is barred of any remedy by writ of *certiorari* as provided by statute.

*Waters, McLennan & Waters*, for the appellant.

*Hiscock, Doheny & Hiscock*, for the respondents.

MERWIN, J. :

It is claimed by the relator that the writ was, in effect, returnable at a Special Term, and, if not, that the defect has been waived. The writ in this case was allowed at the Onondaga Special Term September 1, 1888, and was returnable " within twenty days after the service on you of this writ, at the office of the clerk of Onondaga county * * * so that our Supreme Court may further cause to be done thereon what of right and according to law ought to be done." Service

was made on the assessors on the twelfth of September and on the supervisor on the fourteenth of September. On the 15th of October, 1888, the assessors filed with the clerk of Onondaga county their return, in which, in the first place, they answer upon the merits, claiming, in substance, that the assessment is correct. For a further and second return they say they except to the writ as improper and irregular, inasmuch as it is not made returnable at a Special Term. For a third return they allege the relator is barred by reason of his failure to appear and object on grievance day, and, fourthly, they say they are improper parties, as the assessment-roll at the time of issuing of the writ was in the possession of the supervisor. The return of the supervisor is filed the same day and is substantially the same except that the fourth answer is omitted. Each return is directed to the Supreme Court and is signed by the parties and their attorneys.

The next thing that occurred, so far as the record before us shows, was the making of an order in the matter by the Onondaga Special Term December 20, 1888. In this order after reciting that a writ had been duly granted, and the respondents had filed their return thereto, and the matter had been brought on for hearing, and that it appeared to the court that testimony was necessary for the proper disposition of the matter, and that the parties had stipulated to refer the matter to a referee named, it was ordered that the matter be referred to the referee named to take the evidence as to the matters in issue between the parties and report the same to the court.

The parties appeared before the referee on the 4th of January, 1889, and before any evidence was taken the defendants made the objection that all the proceedings were unauthorized, because the writ was not returnable at Special Term. No ruling on this was made by the referee. Evidence was taken before him on several days. He made his report March 13, 1889, and this was before the court on April 20, 1889, when the order appealed from was made.

The statute (chap. 269 of 1880, § 2) provided that the writ "shall be made returnable at a Special Term in said district." Very likely this called for the designation of some particular term at which the return should be made. Still, after the service of the writ, both parties appeared at the Onondaga Special Term on the 20th of December, 1888, and such proceedings were then taken as would have been

authorized had that term been named in the writ. How that term was, in fact, fixed upon does not appear. It is to be presumed that both parties voluntarily appeared there. The appearance, so far as the order would indicate, was general and upon a writ " duly granted." No motion to dismiss for any irregularity or defect was made. On the contrary, the parties stipulated that the matter be referred, a proceeding that was not necessary or proper if the defect in the writ was to be insisted on. Before the referee the point was taken, but he had no power to rule on it.

The voluntary and full appearance at the term on the twentieth of December, and the stipulation to refer, and failure then to move to dismiss, should be held to be a waiver of the defect complained of. The voluntary acts of the parties fixed the term on the twentieth of December as the term for the return of the writ.

Is the relator barred of any remedy under the act of 1880 by reason of his failure to appear and object on. grievance day ? The assessment attacked is one for personal property. The relator claims that he was not a resident of the town of Elbridge, and that, therefore, the assessors had no jurisdiction to assess him.

In *People ex rel. Mutual Union Telegraph Company* v. *Commissioners of Taxes*, etc. (99 N. Y., 256) it was said, with reference to an assessment in New York city, that it would be an unwarrantable construction of the statute to permit a party complaining of an assessment to lie by without availing himself of the opportunity to remedy his grievances by application to the tax commissioners, under the statute of 1859, and after the assessment had become confirmed by the lapse of time, to arrest the collection by a proceeding under the act of 1880. In this case (see S. C., 31 Hun, 570) it was not disputed that the relator was subject to taxation in the city of New York. The only question was as to the amount. The act of 1859 (chap. 302) gave the party from the second of January to the first day of May an opportunity to apply for correction. It also provided that no reduction should be made by the board of supervisors of any assessment unless it appeared, under oath, that the party aggrieved was unable to attend, within the period prescribed for the correction of taxes, by reason of sickness or absence from the city. It also provided for a review on the merits by *certiorari*, and this was not affected by the act

of 1880 (§ 10). In *People* v. *Wall Street Bank* (39 Hun, 525) there was a similar ruling with reference to an assessment in New York city.

In *People ex rel. Hoffman* v. *Osterhoudt* (24 Week. Dig., 101), where the relator *resided* in, and was a taxable inhabitant of, the city of Kingston, and had in his possession certain personal property for which he was by the assessors of that city assessed, but which he claimed belonged to another party, it was held that the assessors had jurisdiction of the matter of the assessment, and that the relator, having failed to object in season, had no remedy by *certiorari* under the statute.

In *People ex rel. Grace* v. *Gray* (45 Hun, 243) it was held not to be necessary for the relator to show that he had appeared before the assessors or made objection during the period the roll was open for inspection and correction. The case related to an assessment on real estate. It was said that the only condition to the allowance of the writ is that it shall be allowed within fifteen days after the completion of the roll and the giving notice thereof as required by the act. The case in 99 New York is referred to and distinguished. In *People ex rel. R. W. and O. R. R. Co.* v. *The Assessors of Lewiston,* unreported, it was held by Justice BARKER that appearance before the assessors was not a prerequisite to the right to obtain the writ. In *Hebrew Free School Association* v. *Mayor, etc.* (4 Hun, 446), it was held that, where a tax is imposed upon property exempt by law, the omission to appear before the commissioner of taxes does not give validity to the assessment. In *Matter of Douglas* (48 Hun, 318) it is said that the provisions *requiring parties* to appear before the assessors and state their grievances only apply to cases within the jurisdiction of the assessors. A party outside of the jurisdiction is under no obligation to appear before the assessors, and he cannot be presumed to know that an illegal tax is about to be assessed against him. In case the party appears before the assessors and afterwards obtains the writ, he is not limited to the questions raised before the assessors. (*People ex rel. D. and H. C. Co.* v. *Becker,* 26 N. Y. St. Rep., 35.)

In the absence of any statutory requirement to that effect, can it be fairly said that the relator was bound to appear before the assessors and litigate, there, before them the question of their jurisdic-

tion to act? They knew, as appears from the evidence, that he claimed he was not a resident of their town. There had been previous controversy on the subject. It is quite apparent that any appearance by him before them would have been entirely futile. The case in 99 New York is clearly distinguishable from this.

Under the circumstances of this case, we are of the opinion that the failure of the relator to appear before the assessors does not bar him of his remedy under the writ. The respondents in their points discuss the merits of the case, and claim that the assessors correctly decided that the relator was a resident of their town for the purpose of taxation on personal property. This was not passed upon at Special Term, as indicated by the order appealed from, and it is not, therefore, proper to consider it here. Nor is the point available, that the assessors did not have the roll at the time of the issuing of the writ. The statute (§ 2 of the act of 1880) contemplates that it may be out of their hands. (*People ex rel. R. W. and O. R. R. Co.* v. *Hicks*, 105 N. Y., 198; *People ex rel. Warren* v. *Carter*, 47 Hun, 446.)

It follows that the order quashing the writ should be reversed.

HARDIN, P. J., and MARTIN, J., concurred.

Order reversed, with ten dollars costs and disbursements, and proceedings remitted to Special Term for further action.