By the Court.
Ingraham, J.
Section 814 of the Consolidation Act (chapter 410, Laws 1882), provides for the assessment of the taxable property in the city of Hew York. The deputy tax commissioners are directed to commence to assess real and personal property on the first Monday of September, and to report to the commis *364 sioners the sum for which all taxable property under ordinary circumstances will sell.
Section 817 provides that the tax commissioners shall keep in their office books to be called “The annual record of the assessed valuation of real and personal estate,” in which shall be entered in detail, the assessed valuation of such property in the city of New York, and such books shall be opened for correction from the second Monday of January to the first day of May, in each year, but on said last-mentioned day the same shall be closed to enable the commissioners to prepare assessment rolls.
Section-819 provides that the commissioners may at any time before the second day of April in each year, increase, or may diminish at any time before the closing of the books of annual record on the first day of May in each year, the assessed valuation of any real or personal estate in said city, as in their judgment may be necessary for the equalization of taxation, but they shall not increase such valuation after such books are opened for correction and review, except on notice being given to the party affected by such increase twenty days before the closing of said books.
Acting under the authority conferred by the laws embodied in these sections, prior to the second Monday of January, 1881, the defendants as commissioners of taxes in the city of New York, caused eight hundred and eighty-four shares of the capital stock of The North Biver Bank, owned by plaintiff, to be valued at $20,332, and which assessed valuation was entered by the defendants in the book kept in their office as directed in § 817 before referred to, and such valuation remained unchanged until after May 1, 1881.
No notice was given to plaintiff or to the owners of the other stock that the value of such stock would be increased at any time before May 1. About the middle of May, 1881, without notice to plaintiff, defendant caused the value of the stock to be increased from twenty-three dollars per share to twenty-eight dollars per share, which *365 would increase the assessed valuation of plaintiff’s stock from $20,332, to $24,752, and of the other stockholders in the same proportion.
That the sections above cited apply to the stock of banks as well as to other personal property cannot be disputed. No statute is cited that makes any other provision for the time at which the value of the capital stock of banks shall be assessed, or that thé provisions above cited shall not apply to them. The value of the shares of stock having been assessed and entered in the book to be kept by defendants, their valuation could only be changed in accordance with the provisions of the sections above cited, and the change in the valuation, in violation of the express prohibition contained in the sections, was unauthorized and void.
No authority for the change can be found in section 1 of chapter 761, Laws of 1866. That act provided a method by which the value of the shares of stock of banks can be ascertained. Nothing is said about the time at which the valuation is to be made.
The value of ' the shares of stock mentioned was assessed by deducting the proper proportion of the assessed valuation of the. real estate of the bank at the time the assessment was made, and on that assessment being made, the provisions of the act in relation to the change of the values of real and personal property apply.
The fact that the commissioners subsequently reduced the valuation of the real estate of the bank could not give the commissioners the right to increase plaintiff’s assessed valuation without the notice to him which the law requires. The fact that for any reason the assessed valuation of the real estate of the bank was so changed, would authorize the commissioners to increase the assessed value of the shares on giving the proper notice and complying with the law, but would not authorize them to do what the law expressly prohibits them from doing.
As the act of 1859 has been re-enacted in the Consolidation Act, it cannot be said to be repealed by the act of *366 1866. They are not, however, inconsistent, but by this construction may apply and furnish an entirely consistent system, by which the value of the shares of stock of banks can be ascertained, and the valuation thereof proportionately corrected.
It cannot be said that plaintiff was not injured by the increase, because on the second day of April the value of the plaintiff’s property became fixed and he could not be compelled to pay taxes on any increased value. The unlawful act of the commissioners did compel him to pay a tax on such increased value.
The claim of the bank for a reduction of its real estate was made within the time allowed by law. We are of the opinion, therefore, that the acts of the defendants as tax commissioners in increasing the valuation of the shares of stock of the North River Bank was illegal and void.
In National Bank v. City of Elmira (53 N. Y. 49), the court say : “ They (the assessors) were subordinate officers possessing no authority except such as is conferred by statute, and it is a well settled and salutary rule that such officers must see that they act within the authority committed to them, and where the right to act depends upon the existence of some fact which they erroneously determine to exist, their acts are void.
The right of the commissioners to act depended upon the existence of the fact that notice had been given to the owners of the property. Such notice not having been given, they had no jurisdiction to act, and the act was void.
Nor do I think a party can have his property taken from him by the act of a public officer which is without authority and void, and then have his action to recover his property so taken defeated by reason of the fact that if such person had known of the void act in time, he could have reviewed the act of the officer by certiorari. It was said by the court in National Bank v. City of Elmira (supra): “ The property of the plaintiff has been forcibly taken from it in violation of law, and it would be discred *367 itable to the proper administration of justice not to give an effectual remedy.” It does not appear that the plaintiff or the other stockholders knew of the illegal acts of the commissioners until after the time in which they could have reviewed such act by certiorari had expired (See Westfall v. Preston, 49 N. Y. 349).
We are of the opinion that on the facts as proved, plaintiff was entitled to a verdict. No question is made as to the amount of the verdict, and the exceptions should therefore be overruled and judgment ordered for plaintiff on the verdict, with costs.
Freedman, X, concurred.